UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

UNITED STATES OF AMERICA

v.  No. 5:24-CR-31-BJB

ROBERT MILLER

\* \* \* \* \*

OPINION & ORDER DENYING MOTION TO SUPPRESS

Robert Miller stands accused of methamphetamine trafficking. Indictment (DN 1). He now moves to suppress nearly 700 grams of methamphetamine and several incriminating statements obtained after a traffic stop and vehicle search. Motion to Suppress (DN 23) at 1, 2.

Miller contends that the initial stop lacked reasonable suspicion, lasted too long, and led to a vehicle search unsupported by probable cause. Miller Post-Hearing Br. (DN 37) at 5–10. He also seeks to suppress the methamphetamine as the "fruits of the poisonous tree." *Id.* at 15.

The record developed during a suppression hearing, however, shows that no step taken by police—stop, seizure, and search—tripped a constitutional wire. Law enforcement had reasonable suspicion to justify the stop and canine walk and probable cause to support the arrest and search. Though warrantless, the search was constitutional under that requirement's automobile exception, which authorized both the search of the truck and the seizure of the drugs inside. So the motion to suppress fails.

A.  The Record

In response to Miller's motion, this Court held an evidentiary hearing. DN 25. Detective Sergeant Jesse Riddle of the McCracken County Sheriff's Office testified that on the day of the arrest, he received information from a cooperating source about Miller trafficking drugs. Official Transcript (DN 33) at 4:16–5:17. According to Riddle, the source alleged Miller was trafficking in—and currently in possession of—"large quantities of methamphetamine." *Id.* Further, the source shared that Miller, along with his lifted, black Ford pickup truck, was at a particular house in McCracken County packaging methamphetamine with Robert "Danny" Cox. *Id.* The source also informed Riddle of the truck's license plate number, Miller's lack of a driver's license, and the drugs' location in a hidden compartment under the truck bed. *Id.*

Detective David Clark testified at the hearing that this source was "credible and reliable" based on the accuracy of information he previously provided. *Id.* at

1

39:15–41:15. And that source's information was corroborated when an unrelated source independently gave Clark—that same morning—many of the same details about Miller. *Id.* at 38:20–39:14.

After receiving these tips, Clark and Riddle confirmed that Miller's truck was at the house identified by the tipster, that Miller was a registered owner of the truck, and that Miller lacked a driver's license. *Id.* at 8:13–19. After corroborating the informants' tips, the police monitored and recorded a call between one of the sources and Miller. *Id.* at 6:9–15. During that call, the informant asked to buy drugs from Miller, who responded that he was "at Danny's." *Id.* at 7:7–15. Miller agreed to bring the methamphetamine to the cooperator's house in McCracken County and sell it to him for $300 an ounce. *Id.*

In "less than an hour," Riddle estimated, he observed the black pickup truck leaving the residence. *Id.* at 9:1–2. Police could not see who was driving the truck (due to its window tinting) but saw a male silhouette. *Id.* at 42:9–14. Riddle testified that the driver detected the police vehicle and immediately turned onto the next road. *Id.* at 9:7–9. Believing the driver was attempting to return home, Riddle pulled over Miller's truck based on suspicion of driving without a license and drug trafficking. *Id.* at 9:10–12, 10:17–21.

Next, Riddle approached the truck and confirmed that the driver was in fact Miller. *Id.* at 10:22–23. Riddle immediately asked Miller to step out and told him he was being detained. *Id.* at 26:24–30:1. Riddle put Miller in handcuffs, patted him down for weapons, and read him *Miranda* rights. *Id.* at 28:2–5. Within a few minutes, another officer deployed a drug-sniffing dog. *Id.* at 50:12–16. The canine alerted to drugs on the passenger side of the truck. *Id.*

Then, officers searched the truck and found a locked safe bolted to the bottom of the truck bed. *Id.* at 12:13–13:14. In the cab, they found a glass methamphetamine pipe; in the locked safe, they discovered 689 grams of methamphetamine packaged in several bags. Government's Post-Hearing Br. (DN 36) at 3. Then they arrested Miller. Miller confirmed that the safe contained about two pounds of methamphetamine and made numerous incriminating statements concerning methamphetamine distribution. *Id.*

### B.  Miller's Motion

The U.S. Constitution's Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." A traffic stop is considered a seizure. To be considered "reasonable," the stop must be "supported by reasonable suspicion to believe that criminal activity may be afoot." *United States v. Sandridge,* 385 F.3d 1032, 1036 (6th Cir. 2004) (quoting *United States vs. Arvizu,* 534 U.S. 266, 273 (2002)). Typically, a reasonable search is one justified by a search warrant: "searches

conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quotation marks omitted). One relevant exception, as discussed below, is the automobile exception.

Miller argues that the stop of his vehicle, seizure of his person, and search of his truck were unreasonable and therefore unconstitutional. Miller Post-Hearing Br. at 10. Because of this, he contends that all evidence obtained from the traffic stop, including his incriminating statements, must be suppressed. *Id.* at 15. Miller is wrong at every turn. The search and seizures were constitutionally permitted, so the Court lacks any basis for suppressing this evidence.

**1. Vehicle stop.** Miller contends that the traffic stop was unlawful because it was not "supported by reasonable suspicion to believe that criminal activity may be afoot." *Sandridge,* 385 F.3d at 1036 (citation omitted). Reasonable suspicion must rest on "specific and articulable facts" that lead to a "particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Orsolini*, 300 F.3d 724, 728 (6th Cir. 2002) (quoting *United States v. Palomino*, 100 F.3d 446, 449 (6th Cir.1996)); *United States v. Cortez*, 449 U.S. 411, 417–18 (1981).

Here, officers had two sound reasons to stop the truck: Miller's suspended license and his suspected drug trafficking.

First, several facts supported a stop for driving on a suspended license. Riddle knew that Miller didn't have a valid license. He knew that the black truck in the driveway of the house under surveillance was registered to Miller. He saw a man enter the truck before it drove away. Even though Riddle couldn't confirm the driver's identity before the stop, he could reasonably infer that the registered owner was driving: absent evidence to the contrary, an officer may assume that the registered owner of a vehicle is also the driver and stop the vehicle based on that inference. *Kansas v. Glover*, 589 U.S. 376, 378 (2020). And nothing in the record offers a reason to suspect that Riddle knew "information *negating* an inference that the owner is the driver of the vehicle," so "the stop [wa]s reasonable." *Glover*, 589 U.S. at 378 (2020) (emphasis added). The corroborated tip, vehicle registration, lack of a license, and absence of evidence suggesting a different driver made the stop a reasonable response to Riddle's suspicion that Miller was driving without a license. *Id.* at 380–81.

Second, Riddle also had reasonable suspicion that Miller was in the process of selling methamphetamine—a separate offense that would separately justify the traffic stop. *United States v. Slater*, 209 F. App'x 489, 495 (6th Cir. 2006) ("A traffic stop is permissible when law enforcement has 'reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity.'" (quoting *United States v. Hensley*, 469 U.S. 221, 227 (1985))). A reliable informant had just

reported that Miller was packaging methamphetamine at the house law enforcement was surveilling. Police confirmed that the truck was there and that Miller owned it. Riddle and Clark overheard the confidential informant offer to buy methamphetamine from Miller. They heard Miller tell the CI where to meet him to exchange the money and product. Then they saw a man exit the house, get into Miller's truck, and leave.

Predictive tips from known, reliable informants—when corroborated—can support reasonable suspicion. *United States v. Keeling*, No. 3:16-cr-127, 2017 WL 2486353, at *4 (W.D. Ky. June 8, 2017), *aff'd*, 783 F. App'x 517 (6th Cir. 2019)) (citing *United States v. Mullins*, 47 F.3d 1171, 1995 WL 66624, at *5 (6th Cir. Feb. 16, 1995) (unpublished table decision)) ("A confidential informant's tip," when corroborated, "is sufficient to establish reasonable suspicion even in the absence of personal observations by an officer."); *see also United States v. Hunter*, 333 F. App'x 920, 923–24 (6th Cir. 2009) ("Tips containing specific predictive information from a known and reliable CI, which officers investigate and verify, may have the sufficient indicia of reliability" to justify a *Terry* stop.). Here, as discussed above, officers had even more: real-time confirmation that Miller intended to sell methamphetamine.

Miller's counterarguments fall short. "[T]he investigatory stop in this case," he maintains, "relied entirely upon the [informant's] statements without independent investigation or verification." Miller Post-Hearing Br. at 12. But that's incorrect. Police corroborated key details, including the truck's location, Miller's registration, and his lack of a license. Plus, police overheard and recorded Miller's agreement to sell methamphetamine—evidence that went beyond a single tip.

Even if the police hadn't corroborated any of the informant's tips, moreover, the officers' reliance on that information could still provide reasonable suspicion. In fact, courts have held that this sort of intelligence can clear the higher standard of probable cause. In *United States v. Neal*, for example, tips that came from a "known person … whose reliability an officer attest[ed to] with some detail," and who "state[d] that he ha[d] seen a particular crime and particular evidence, in the recent past," supplied probable cause supporting an affidavit even "without independent police corroboration." 577 F. App'x 434, 440 (6th Cir. 2014) (quoting *United States v. Allen,* 211 F.3d 970, 976 (6th Cir. 2000) (en banc)).

The CI's call with Miller likewise could've supported the stop on its own. Even without corroboration of other tips, officers heard and recorded Miller agreeing to sell drugs and then saw him promptly act on that agreement. Miller hasn't challenged in any way the accuracy of that recording, which the Government introduced at the suppression hearing. That alone was surely enough to give police reasonable suspicion to stop the truck. *See United States v. Briggs,* 431 F. App'x 389, 395–96 (6th Cir. 2011) (defendant's agreement, over the phone with a government informant,

4

to sell crack, along with his previous criminal history, could justify stop and arrest "even though [police] did not actually see him doing anything illegal.").

Miller also claims that the "entire traffic stop was a pretextual guise to conduct a warrantless search of defendant's vehicle." Miller Post-Hearing Br. at 10. But the motivations of the officers who conducted the traffic stop are irrelevant. The "constitutional reasonableness of traffic stops" does not turn "on the actual motivations of the individual officers involved." *Whren v. United States,* 517 U.S. 806, 813 (1996). In fact, "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Id.* Black-letter Fourth Amendment law makes plain that the pretextual nature of an otherwise lawful stop doesn't lead to suppression. *United States v. Huguenin,* 154 F.3d 547, 557 (6th Cir. 1998) ("The Supreme Court in *Whren*, thus, made clear that pretext (the subjective motive for stopping a vehicle) is irrelevant when probable cause exists, but in regard to seizures made without probable cause, or even reasonable suspicion, there is no justification for pretext."). What the officers subjectively thought doesn't matter "as long as the circumstances, viewed objectively, justify" the stop and arrest. *Id.* (citation omitted). Here they plainly did.

Accordingly, the police had reasonable suspicion to stop and pull over the black Ford truck, even though they merely suspected—but had not yet confirmed—that Miller was driving. And the stop was lawful based on their reasonable suspicion that he was driving without a license and trafficking methamphetamine.

**2. Miller's arrest.** Miller also contends that his subsequent arrest was unlawful (and that his subsequent statements should, therefore, be suppressed) because police lacked either probable cause or a warrant. But a warrantless arrest is constitutional if the officer has probable cause to believe that "a criminal offense has been or is being committed." *Devenpeck v. Alford,* 543 U.S. 146, 152 (2004). "Probable cause is not a high bar." *District of Columbia v. Wesby,* 583 U.S. 48, 57 (2018) (internal quotation marks omitted). "It requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.* (internal quotation marks omitted). That probability "depends on the totality of the circumstances." *Id.* (quotation marks omitted). "Whether a set of facts meets this standard turns on a practical assessment commonly made by reasonable and prudent people, not a technical assessment reserved for legal technicians." *United States v. Baker,* 976 F.3d 636, 645 (6th Cir. 2021) (quotation marks omitted).

Officers had probable cause to believe that Miller was trafficking methamphetamine. That authorized them to arrest Miller as soon as Riddle identified him. They also had probable cause to believe he was driving without a license. That too authorized his arrest.

5

"[R]easonable and prudent people" would surely recognize "a substantial chance of criminal activity" when—following a call promising to deliver drugs to a different location—Miller left a surveilled house and drove away. *Baker*, 976 F.3d at 945. A reliable informant had just reported that Miller was at the residence bagging methamphetamine. The same source also identified the truck Miller appeared to be driving. Once police lawfully stopped the truck and confirmed Miller was behind the wheel, they had even more: less than an hour earlier, Miller had told the informant that he would leave the residence and come sell methamphetamine to the informant. That gave the officers probable cause to arrest Miller without a warrant. *Devenpeck*, 543 U.S. at 152. And because the officers also knew Miller was driving without a license, they had a separate basis to arrest him. Since probable cause only requires a "probability" of criminal activity, "not an actual showing of such activity," nothing more was needed. *Baker*, 976 F.3d at 645.

The Sixth Circuit has affirmed findings of probable cause on similar facts. In *United States v. Gill*, for example, the Court of Appeals held that probable cause for a warrantless arrest for drug trafficking existed when a source "arranged by phone to buy from Gill five ounces of cocaine at a location on Vine Street," "Gill told Holmes that Gill would be driving a green Acura," and "Gill arrived at the location, driving a green Acura." 685 F.3d 606, 609–10 (6th Cir. 2012). So too in *United States v. Strickland*: "Armed with two taped conversations of known drug dealers who identified Strickland as a potential source of cocaine, an informant's account of a conversation in which Strickland agreed to meet Haggard at a certain time and place to sell him cocaine, and the independent observation of Strickland's arrival at the [time and place,]" officers had probable cause to arrest Strickland. 144 F.3d 412, 417 (6th Cir. 1998). Miller's situation may differ somewhat—he was en route from a known location but hadn't yet arrived at the location set for the transaction, *cf. Strickland*, 144 F.3d at 417—but that hardly undermines the importance of his departure in response to the drug-sale call. The totality of his actions falls well within the heartland of permissible trafficking arrests. Taken together, Miller's words and actions formed a textbook example of probable cause in a drug trafficking investigation.

Miller's counterarguments again fail.

First, he argues that "Sergeant Riddle testified that at the time defendant Miller was at the home on Sunset Drive, officers did not have probable cause to arrest Miller." Miller Post-Hearing Br. at 6. Even if true, that's irrelevant; he wasn't arrested on Sunset Drive, but only after he pulled away following the CI drug-buy call in the truck registered to him and thought to contain a secret meth compartment. Miller goes on to argue that "nothing in [law enforcement's] investigation of Miller changed between the time Miller was at the Sunset Drive home and when he was subsequently stopped and arrested." *Id.* Even assuming officers lacked probable

6

cause to arrest him at the house (a point the Government doesn't contest), a lot changed between then and the traffic stop: he appeared to respond immediately to the buy call, drive without a license, and use the truck suspected of the secret compartment. In short, officers saw Miller do exactly what a reasonable officer would expect him to do, and indeed what he said he would do, in order to traffic methamphetamine. Miller's departure was central to the existence of probable cause, so why would the analysis exclude that period of time?

Second, Miller argues that his "detention was an actual arrest that must be supported by probable cause," which the police did not have. Miller Post-Hearing Br. at 6. This Court agrees probable cause is required for an arrest.[1] But here, probable cause exists on *multiple* grounds. Even assuming Miller is right that this was an arrest, therefore, the corroborated tips, supervised phone call, and departure from the residence all gave probable cause to arrest Miller for drug trafficking. And identifying Miller, who was unlicensed, as the truck driver provided probable cause to arrest him for driving without a license.

Since the police had probable cause to arrest Miller when they identified him as the driver, his arrest was constitutional.

**3. The dog sniff.** Miller next argues that the canine walk "impermissibly extended the duration of an otherwise routine traffic stop," and ultimately alerted the officers to drugs in the truck. Miller Post-Hearing Br. at 9. A canine walk may not prolong a traffic stop "beyond the time reasonably required to complete [the stop's] mission." *Rodriguez v. United States,* 575 U.S. 348, 350 (2015) (quoting *Illinois v. Caballes,* 543 U.S. 405, 407 (2005)). This rule applies to "an otherwise-completed traffic stop, absent reasonable suspicion." *Id.* at 353. And "even if minor delays to conduct a dog sniff are unconstitutional for routine traffic stops, officers may still extend a stop to conduct a dog sniff when such action is supported by reasonable suspicion of criminal activity." *United States v. Salas*, 820 F. App'x 405, 412 (6th Cir. 2020).

But this was not a routine traffic stop converted into a drug investigation with the introduction of a drug dog. Rather, officers pulled Miller over because they reasonably suspected that he was using the truck to "transpor[t] illegal drugs." *Id.* at 412. "On that basis," the "dog sniff was constitutional." *Id.* The canine walk did

---

[1] The United States argues that the initial handcuffing, pat down, and Mirandizing of Miller was a *detention*—not an arrest. Government Post-Hearing Br. (DN 36) at 7. Such a detention would only require reasonable suspicion, not probable cause. *United States v. Orsolini*, 300 F.3d at 724, 728 (6th Cir. 2002). Because probable cause existed for an outright arrest, the Court needn't decide whether a less restrictive classification in the law's taxonomy of seizures applies here.

7

not improperly extend the stop—confirming the presence of drugs was the point of the stop.

Although Miller was stopped, in part, for driving without a license, that was not the only reason for the stop. Part of the stop's "mission" was to confirm whether Miller was engaging in drug trafficking. *See Rodriguez*, 575 U.S. at 350 ("the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's mission" and is "carefully tailored to its underlying justification."); *id.* at 354 (internal quotations and citations omitted). So, even when he was detained outside the vehicle, the traffic stop had not been completed. *See Salas*, 820 F. App'x at 412. *Rodriguez* only applies to an "otherwise-completed traffic stop, absent reasonable suspicion." 575 U.S. at 353. These facts don't fit that framework. Here, "officers [could] extend a stop to conduct a dog sniff" because doing so was "supported by reasonable suspicion of criminal activity." *Salas,* 820 F. App'x at 412. And several decisions by the Sixth Circuit, issued after *Rodriguez*, support this interpretation. *Id.* (first citing *United States v. Calvetti*, 836 F.3d 654, 667 (6th Cir. 2016); and then citing *United States v. Collazo*, 818 F.3d 247, 259 (6th Cir. 2016)). So Miller has offered no reason to suppress evidence due to the dog sniff or its effect on the length of the stop.

**4. The automobile exception.** The Fourth Amendment protects against unreasonable searches. "Generally, searches that occur pursuant to a valid warrant are per se reasonable." *United States v. Zulawski*, No. 20-5577, 2022 WL 247742, at *4 (6th Cir. Jan. 27, 2022) (citing *United States v. Crawford*, 943 F.3d 297, 305 (6th Cir. 2019)). Miller points to the lack of a warrant and contends that the search of his truck was unlawful even if the stop itself was justified. If he's right, the nearly 700 grams of methamphetamine and the glass methamphetamine pipe seized from the truck might be subject to suppression.

Miller is right that vehicle searches typically require a warrant. But the so-called "automobile exception" to that requirement allows "an officer [to] perform a warrantless search of a detained vehicle should the officer have probable cause to believe the vehicle contains contraband or evidence of criminal activity." *United States v. Lyons*, 687 F.3d 754, 770 (6th Cir. 2012) (citation omitted). The Supreme Court has identified two rationales for this exception: the "ready mobility" of vehicles and the "lesser expectation of privacy" in them due to the "pervasive regulation of vehicles capable of traveling on the public highways." *California v. Carney*, 471 U.S. 386, 390–92 (1985).

Miller's argument fails because the officers had probable cause to believe that Miller had methamphetamine in his car. This was true both before and after the canine alert—for the same reasons discussed above regarding probable cause to arrest: the informant's tips, police corroboration, and Miller's recorded agreement to traffic methamphetamine. These facts surely would lead "reasonable and prudent

people" to find a "substantial chance of criminal activity" when Miller left the house and drove away. *Baker*, 976 F.3d at 645.

True, probable cause to *arrest* doesn't necessarily cinch the case for probable cause to *search*. The two inquiries technically "focus on different things"—"belief of guilt specific to [a] suspect," on the one hand, and the "nexus … between a crime and the place to be searched," on the other. *Id.* at 645–46. But "the same prudent person standard governs both contexts." *Id.* at 645 (quotation marks omitted).

Here, however, the relevant record information overlaps substantially (perhaps completely). Miller, moreover, offers no real reason why the analyses would differ. Law enforcement believed that the truck was being driven, without a license, to carry drugs from a house where they were packaged to another house where they would be sold. The same facts that gave Riddle and the other officers probable cause to believe Miller was guilty of drug trafficking—the informants, corroborated details, phone call, quick departure from Danny's house—likewise gave them probable cause to believe evidence of that drug trafficking would be found in the automobile Miller was driving. So, as in similar cases, the distinction between probable cause to search or arrest makes little to no difference. In *Greene v. Reeves*, for example, the Sixth Circuit reasoned that "both findings must ultimately stand or fall on the same evidence," such that "[i]f it was reasonable to obtain a search warrant, it had to be equally reasonable to obtain the arrest warrant." 80 F.3d 1101, 1106 (6th Cir. 1996); *see also Mendenhall v. Riser*, 213 F.3d 226, 235 n.18 (5th Cir. 2000) ("In this case, the requisite probable cause [to search and arrest] appears to be coterminous."). Finding a tighter "nexus" between the crime and the area searched would be hard indeed. *Baker*, 976 F.3d at 646.

Even if the basis to stop didn't provide a basis to search, officers learned even more in between the two. Riddle's identification of Miller as the driver further confirmed the CI's tips and corroborated the recorded buy conversation. Official Transcript at 10:22–23. This gave the officers further cause to search the truck. *United States v. Justice*, No. 19-cr-77, 2020 WL 6494990, at *4 (E.D. Ky. July 16, 2020), R&R adopted, 2020 WL 4530215 (E.D. Ky. Aug. 6, 2020) ("The CI's tip was corroborated by the officers' own observations which helped provide probable cause for the search of the automobile.") (cleaned up). So did the canine's alert. Because the officers testified, without rebuttal, that the canine was "train[ed]" and "fully certified," Official Transcript at 49:8–50:1, its alert was "sufficient to establish probable cause for the presence of a controlled substance," *United States v. Winters*, 782 F.3d 289, 304 (6th Cir. 2015) (quotation marks and citation omitted). And the probable cause extended to "every part of the vehicle and all containers found therein

9

in which the object of the search could be hidden." *United States v. Stubblefield*, 682 F.3d 502, 507 (6th Cir. 2012) (internal quotation marks and citation omitted).[2]

**5. Fruit of the Poisonous Tree.** Last, Miller argues that the evidence seized from his truck and his subsequent incriminating statements should be suppressed as "fruits of the poisonous tree" since they were the result of the seizure of the vehicle and search of the truck—actions that Miller believes were unlawful. Miller Post-Hearing Br. at 15. "In a nutshell, this doctrine counsels for the exclusion of evidence derived from information or items obtained in an illegal search." *United States v. Elmore*, 18 F.4th 193, 199 (6th Cir. 2021) (quotation marks and alteration omitted). But this argument only works if the search and seizure violated the Fourth Amendment. Here they did not.

## ORDER

Because law enforcement had reasonable suspicion that Miller was engaged in drug trafficking and driving without a license, they could lawfully pull over his truck. When they identified him, they had probable cause to arrest him. Deploying a drug-sniffing dog did not unlawfully prolong the stop, and the dog's alert—combined with the rest of the incriminating information known to the officers—gave them probable cause to arrest Miller and to believe the vehicle contained drugs. This probable cause allowed law enforcement to search the vehicle, even without a warrant, under the automobile exception. So the Court rejects each of Miller's arguments and denies his motion to suppress (DN 23).

Benjamin Beaton, District Judge
United States District Court

July 18, 2025

---

[2] The Government contends that the search was also justified by the "search incident to arrest" doctrine. Government's Post-Hearing Br. at 7. Miller does not address this argument in any of his briefing.

Is searching a locked safe under a truck bed really necessary to "officer safety" and "evidence preservation"? Those are the twin justifications for the search-incident exception to the search-warrant requirement (which exists alongside the automobile exception). "Police may search a vehicle incident to a recent occupant's arrest … if … it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Arizona v. Gant*, 556 U.S. 332, 337, 351 (2009). A "search incident" is limited to the "passenger compartment." *Id.* at 343–44. Here the police searched outside the passenger compartment. And the Government supplies no caselaw extending the doctrine "to reach detached containers outside of the vehicle." *United States v. Clayton*, No. 22-cr-20262, 2024 WL 2179142, at *5 (W.D. Tenn. Mar. 15, 2024) (plastic bag sitting on the roof of a car did not fall under the exception). The safe *was* attached to the truck bed—but was outside the passenger compartment, locked, and out of reach of Miller. *Gant*, moreover, rejected an extension of the search-incident doctrine to the entire vehicle. 556 U.S. at 346–47. Because here the automobile exception justifies the search, nothing requires stretching a parallel exception as far as the truck bed.